*In re* MARRIAGE OF JULIE ROGLIANO, Petitioner-Appellee, and ALBERT ROGLIANO, JR., Respondent-Appellant.

Fifth District No. 5—89—0424

Opinion filed May 17, 1990.

405

406

John W. Leskera, of Dunham, Boman & Leskera, of East St. Louis, for appellant.

Grey Chatham, of Chatham & Babka, of Belleville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Albert Rogliano, Jr. (hereinafter Husband), appeals from the judgment in dissolution of marriage entered May 26, 1989, by the circuit court of St. Clair County, and the subsequent order denying his posttrial motion to reconsider. Husband also appeals from the court's temporary order of December 2, 1988. Husband's appeal involves provisions in each order concerning the court's award of child support to Julie Rogliano (hereinafter Wife).

Husband and Wife were married March 19, 1988, and the minor child was born August 31, 1988. The parties separated prior to the child's birth, and Wife filed the petition for dissolution of marriage on October 28, 1988. The court ordered temporary child support in the amount of $700 per month beginning December 15, 1988. Hearing on all remaining issues was held May 10, 1989.

Husband is a general and thoracic surgeon who practiced in the Granite City, Illinois, area until December 31, 1987. Husband testified that he voluntarily left his practice because of dissatisfaction with the doctors' group with which he was associated. He testified that because of a restrictive covenant in his association agreement and an inability to pay start-up malpractice premiums and other costs, he decided not to start a private practice or seek employment in his field at that time. He was unemployed until March 1, 1989, at which time he began working as an emergency room physician at various hospitals on an independent contractor basis. During March and April 1989 Husband had net earnings of $7,200 per month, with the only deduction being for his malpractice insurance. Husband had gross income of

$175,000 and after-tax income of $72,000 in 1987. Husband had 1988 income in the amount of $15,000, attributable to his prior practice. Husband owned a $175,000 home with net equity of $31,000, two vehicles and a deposit account in the amount of $2,385 at the time of the final hearing. During Husband's unemployment he cashed in a money market certificate and individual retirement accounts totalling $41,500 to cover his living expenses, which were $3,500 per month according to Husband. He paid the ordered temporary support out of his savings until he began working in March 1989. Husband testified that he was $15,000 in arrears for payment of 1987 real estate taxes and other obligations as a result of his past unemployment.

Wife was the director of medical records at St. Elizabeth's Hospital in Granite City, Illinois, at the time of the final hearing, earning $29,000 per year, with net monthly income of $1,500. Wife returned to work full time two months after the birth of the minor child. Wife reported in answers to interrogatories that the necessary expenses of the minor child in March 1989 were $955 per month. The court found at both the temporary support hearing and the final hearing that the child's expenses were $990 per month. Wife's monthly expenses as reported in her answers to interrogatories were $650 per month. As Wife moved into her parents' home when the parties separated, she did not include any amount for housing or household expenses in either her or her child's expenses. However, wife intended to establish her own household by June 1, 1989, and estimated that her housing expense would be at least $500 per month and utilities would be at least $125 per month.

In the May 26, 1989, order on all remaining issues the court found that Husband was employed, with gross income of $7,100 per month, and would have net income of approximately $5,100 per month. The court set child support at $1,100 per month based on the statutory amount of 20% of Husband's net income. Wife was awarded the dependency tax exemption and was ordered to continue the coverage of medical and dental insurance she presently had in place for the minor child. The parties were ordered to split the child's nonreimbursed medical expenses. Husband was ordered to maintain a policy of disability insurance and name the child as the sole beneficiary of a life insurance policy currently in effect. The court reserved ruling on issues regarding the child's educational expenses. The court ordered Husband to pay Wife $700 for November 1988, which was the month intervening between the filing of the temporary support petition and the month temporary support was ordered to begin.

Husband claims that the court abused its discretion in determin-

ing child support in the amount of $1,100 per month by arbitrarily and inappropriately relying on the minimum support percentage in the statutory guidelines because the award exceeded the amount of the child's necessary expenses, resulting in a "windfall" to the Wife, and because the court failed to take into account the Wife's income in making the award. Husband further takes issue with the court's order of temporary support in the amount of $700 per month during a period of time when he was unemployed and with the final order requiring him to pay $700 for support retroactive to the filing of the temporary petition. Husband also claims that the court abused its discretion when it awarded the dependency exemption to the Wife for purposes of Federal and State income tax purposes. Finally, Husband urges that the court erred in ordering him to name the minor child as the full and exclusive beneficiary of Husband's life insurance policy.

 We will first discuss the error alleged in the court's temporary support order of $700 per month. In proceedings for dissolution of marriage under the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) (Ill. Rev. Stat. 1987, ch. 40, par. 101 *et seq.*), either party may move for temporary support of a child of the marriage entitled to support. (Ill. Rev. Stat. 1987, ch. 40, par. 501(a)(1).) The standards contained in section 505 of the Dissolution Act regarding child support are applicable to the determination of temporary child support. (Ill. Ann. Stat., ch. 40, par. 501(a)(2), Historical and Practice Notes, at 377 (Smith-Hurd 1980).) The award of temporary alimony and child support is dependent upon the financial ability and current circumstances of the parties, but the trial court has considerable discretion in awarding temporary alimony and support. (*In re Marriage of Lang* (1979), 73 Ill. App. 3d 427, 429, 392 N.E.2d 585, 586.) A trial court's decision as to awards of temporary allowances will not be set aside unless it is contrary to the manifest weight of the evidence. *Lang*, 73 Ill. App. 3d at 429-30, 392 N.E.2d at 586.

The record indicates that Wife filed her petition for temporary child support on November 30, 1988, alleging that the parties had been separated since July 17, 1988, that she had received no child support since their separation and that she lacked sufficient financial resources to support the parties' minor child. She testified at the hearing that she went back to work in October and that her net monthly income was $1,500. The child's day care expenses were $600 per month, food for the child was $90 per month, and diapers and clothing were $150 per month. Wife also submitted petitioner's exhibit 1, an itemization of expenses for her and the child, from which the court determined that the child's reasonable needs were $990 per

month or $1,250 with a reasonable allowance for shelter.

Husband testified that while he had not worked since December 31, 1987, he had liquidated certain investments in order to meet his living expenses of $3,500 per month. Husband had purchased a $175,000 home in November 1987, with $25,000 in equity. He owned a 1987 Blazer and a 1977 Corvette. Husband testified that he had interest income from his Keogh plan and IRA's, but that he was not receiving it. Husband hoped to be back to work shortly after the first of the year, but would need $50,000 to $60,000 for malpractice insurance and start-up expenses to return to private practice. Wife's attorney noted that 20% of the $3,500 Husband was able to spend for his own living expenses was $700.

■ Based on the total reasonable expenses of $1,250, the court assessed $700 as Husband's temporary child support obligation. As Husband had no net income at the time, the court was bound to order support in an amount considered reasonable in the particular case. (See Ill. Rev. Stat. 1987, ch. 40, par. 505(5).) Based on the insufficiency of Wife's net income to support both her and the child and the availability of assets which Husband could liquidate to support his own lifestyle comfortably, we find $700 per month to be totally reasonable, consistent with the manifest weight of the evidence and not an abuse of discretion. Moreover, given that Husband had returned to work at the time of the final hearing earning some $7,100 per month, we find no abuse of discretion in the court ordering Husband to pay $700 in child support for the month of November 1988. Retroactive allowance of support in a dissolution proceeding is within the discretionary power of the trial court if such allowance is deemed fit, reasonable and just. *Plant v. Plant* (1974), 20 Ill. App. 3d 5, 7, 312 N.E.2d 847, 849.

■ ■ We will next discuss the error alleged in the court's award of final child support in the amount of $1,100 per month. An award of maintenance and child support is a matter within the sound discretion of the trial court, and the award will not be disturbed on appeal absent an abuse of discretion. (*In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 812, 439 N.E.2d 1005, 1008.) Section 505(a) of the Dissolution Act provides in pertinent part:

"(a) In a proceeding for dissolution of marriage *** the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for his support, without regard to marital misconduct.

(1) The Court shall determine the minimum amount of support by using the following guidelines:

| Number of Children | Percent of Supporting Party's Net Income |
|---|---|
| 1 | 20% |

\* \* \*

(2) The above guidelines shall be applied in each case unless the court, after considering evidence presented on all relevant factors, finds a reason for deviating from the guidelines. Relevant factors may include but are not limited to:

(a) the financial resources of the child;

(b) the financial resources and needs of the custodial parent;

(c) the standard of living the child would have enjoyed had the marriage not been dissolved;

(d) the physical and emotional condition of the child, and his educational needs; and

(e) the financial resources and needs of the non-custodial parent.

If the court orders a lower award, based on consideration of the factors in paragraphs (2)(a) through (2)(e) of subsection (a) of this Section, it shall make express findings as to its reason for doing so. The guidelines may be exceeded by the court without express findings, or by agreement of the parties." Ill. Rev. Stat. 1987, ch. 40, pars. 505(a)(1), (a)(2).

This court has recently held that the statutory factors enumerated in section 505(a)(2) are not to be considered if the circuit court is following the guidelines for child support as they are delineated in section 505(a)(1), and only if the circuit court were going to impose more or less than the minimum standard required under the statutory guidelines is a circuit court required to consider the relevant factors of section 505(a)(2). (*In re Marriage of Tatham* (1988), 173 Ill. App. 3d 1072, 1093, 527 N.E.2d 1351, 1363.) While the court should not blindly apply the statutory guidelines in every case (*Tatham*, 173 Ill. App. 3d at 1093, 527 N.E.2d at 1363), the addition of the guidelines to section 505 of the Dissolution Act shifts the burden of presenting evidence in a child support hearing to the parent who wishes to shift the non-custodial parent's contribution below or above the specified percentages. *In re Marriage of Blaisdell* (1986), 142 Ill. App. 3d 1034, 1041, 492 N.E.2d 622, 627.

The respondent in *Tatham* argued that the court had blindly followed the guidelines in assessing 20% of his net income without considering his obligation of support to the children of his prior marriage and without considering the actual needs of his daughter in determining the amount of support. We found no merit in either argument and

agreed with the determination of the trial court that there was no reason to deviate from the statutory guidelines. Respondent had not proved he was legally obligated to support his emancipated children from the prior marriage. Moreover, we rejected the argument concerning the "actual needs" of the minor child, citing the decision of the supreme court in *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 483 N.E.2d 1229. In *Bussey* the supreme court held that to consider "shown needs" of a minor child is in effect eliminating the consideration of the "standard of living the child would have enjoyed had the marriage not been dissolved." *Bussey*, 108 Ill. 2d at 297, 483 N.E.2d at 1234.

▮ Husband makes the "actual needs" argument in the instant case in that the court assessed child support of $1,100 per month when the Wife only testified to reasonable expenses in the amount of $990 for the child. We believe that Husband has ignored evidence about the reasonable housing expenses the Wife would incur as soon as she and the minor child moved from her parents' home. Notwithstanding that omission, we believe the court could properly have assessed $1,100 per month in child support because it was consistent with the standard of living this child would have enjoyed had the marriage not been dissolved, since his parents would have had net monthly income of at least $8,700. Moreover, where a noncustodial parent has the ability to pay support in excess of the stated needs of the child, a court may order child support in excess of the needs to enable the child to enjoy the standard of living he would have had if the marriage had not been dissolved. *In re Marriage of Bean* (1989), 181 Ill. App. 3d 671, 675, 537 N.E.2d 342, 345.

Husband urges, in any event, that the award was inappropriate in the case of an infant child by calling our attention to the recent case which found an abuse of discretion for awarding support in the amount of 20% of net monthly income where said amount was excessive for the child in question. (See *In re Marriage of Bush* (1989), 191 Ill. App. 3d 249, 547 N.E.2d 590.) Husband argues that the minor child, who was a nine-month-old infant at the time of the final hearing, could not possibly require $1,100 per month, just as the four-year-old child in *Bush* was found not to require more than $800 per month. In *Bush* both the custodial and noncustodial parents were physicians. The custodial parent earned $7,200 per month and the noncustodial parent earned almost $25,000 per month. The noncustodial parent was ordered to pay into an irrevocable trust for the child an amount equal to 20% of his net monthly income less the cost of maintaining a life insurance policy to secure his child support obligation and $800 to be paid

directly to the custodial spouse. The reviewing court in *Bush* held that where the individual incomes of both parents are more than sufficient to provide for the reasonable needs of the parties' children, taking into account the lifestyle the children would have had absent the dissolution, the trial court is justified in setting a figure below the guideline amount. *Bush*, 191 Ill. App. 3d at 260, 547 N.E.2d at 596.

■ We find the circumstances of the instant case distinguishable from *Bush* and accordingly hold that its reasoning should not control in this case. Whereas in *Bush* the court found that the child needed only $800 in monthly support, an award of 20% of the noncustodial parent's income was approximately $30,000 per year. No doubt that is why the trial court devised the award so that the excess monies would be placed in trust. The reviewing court found that use of the trust was improper because it appeared to be an unlawful court-ordered inheritance. In the instant case, however, the 20% award and the amount of reasonable needs found by the trial court are proximate in amount and the Wife had much less disposable income with which to meet the child's needs than did the custodial parent in *Bush*. Nor can we can say that the award greatly exceeded or was inappropriate to the needs of an infant or that it resulted in a windfall to Wife given her need to find housing for her and the minor child.

■ This leads to our consideration of Husband's second argument supporting an abuse of discretion in following the guidelines: that the court failed to consider the financial circumstances of the Wife thus requiring her to assume no part of the child's support. We agree that financial responsibility for the support of a child is the joint obligation of the parents. (*In re Marriage of Leva* (1983), 125 Ill. App. 3d 55, 56, 460 N.E.2d 1179, 1180.) However, while both divorced parents are responsible for the care and well-being of their children, it does not follow that their burden is equal and it is only equitable that the parent with the disproportionately greater income than the other bear a greater share of the costs of support, especially if it is the noncustodial parent who is earning the greater income. *Sullivan v. Sullivan* (1978), 57 Ill. App. 3d 958, 963-64, 373 N.E.2d 829, 833.

We note that the court ordered the Wife to continue coverage of health insurance for the minor child and to split payment of nonreimbursed medical expenses with Husband. Thus a portion of the child's support was ordered to be directly paid by the Wife. Moreover, in our review of the record we find that the court did consider the Wife's income in this award. The Wife had net income at the final hearing of $1,500, her own expenses were $650 and the child's expenses were $990. She also testified that moving into an apartment would cost at

least an additional $625. With child support of $1,100 added to her own income she would have $335 remaining at the end of the month. On the other hand, Husband would have $2,500 remaining after payment of child support and his monthly living expenses of $3,500.

■■ Husband submits that the court failed to adequately consider or take into account the evidence that his income was temporary and uncertain, based on pay from only two months as an emergency room physician and that he had practically exhausted his nonmarital assets for living expenses and support payments prior to the final hearing. Assuming for the sake of argument that the work as an emergency room physician was temporary, the court could still have determined that $1,100 per month was reasonable. If net income cannot be determined because of default or any other reason, the court shall order support in an amount considered reasonable in the particular case. (Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(5).) We note that Husband left his prior practice as a surgeon and was voluntarily unemployed for a period in excess of one year. While we do not see evidence that Husband left his employment in order to evade responsibility to support his child, we cannot agree that support below the statutory guidelines after he has returned to work is necessary or appropriate merely because Husband was forced to liquidate some of his assets in order to support himself and incidentally pay three months of temporary child support during that period of unemployment. We also note that Husband retained certain assets including the equity in his home, his Keogh plan and vehicles in spite of the year's layoff. Moreover, Husband expressed an intent to return to private practice as a surgeon, and there is nothing in the record which would convince us that $1,100 monthly child support would prevent Husband from reopening such a practice. Husband would also have the available remedy of filing a petition to modify his support obligation if he were laid off from his present position.

■■ ■ This court has held that in determining whether the trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court, but whether the trial court acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted. (*In re Marriage of Aud* (1986), 142 Ill. App. 3d 320, 326, 491 N.E.2d 894, 898.) When the court considered the respective disposable incomes of each party it could reasonably have determined that an award of 20% of the Husband's net monthly income was fair and equitable. We therefore hold that the court did not abuse its discretion in making this

award based on the statutory guidelines.

■■ We do believe under the circumstances, however, that the court below erred in awarding the dependency tax exemption to the Wife. We note that it is within the authority of the trial court to allocate the exemption to the noncustodial spouse and to order the custodial parent to sign a declaration for Internal Revenue Service purposes that he or she will not claim the exemption. (*In re Marriage of Einhorn* (1988), 178 Ill. App. 3d 212, 224-25, 533 N.E.2d 29, 37; *In re Marriage of Van Ooteghem* (1989), 187 Ill. App. 3d 696, 698-99, 543 N.E.2d 899, 901.) We also note that if the noncustodial parent is awarded the dependency tax exemption, the order must provide that the custodial parent's obligation to execute and deliver the IRS declaration each year is contingent upon the custodial parent's receipt of child support payments. *Einhorn*, 178 Ill. App. 3d at 225, 533 N.E.2d at 37.

■■ Prior to 1985, section 152(e) of the Internal Revenue Code provided that a noncustodial parent could claim his child as a dependent where the noncustodial parent was given the exemption in a decree and he could prove he provided at least $600 in support during the year (I.R.C. §152(e)(2)(A) (1989)), or if the noncustodial parent provided $1,200 in support during the year and the custodial parent did not provide more than that amount (I.R.C. §152(e)(2)(B) (1989)). Because of a desire to eliminate the Internal Revenue Service's role in determining which parent was entitled to the exemption, section 152(e) was amended by the Deficit Reduction Act of 1984 to provide that the custodial parent would receive the exemption except where the custodial parent signed a declaration waiving the right to claim the exemption and the noncustodial parent attached the signed declaration to his return for that taxable year. I.R.C. §§152(e)(1), (e)(2) (1989); see also *Einhorn*, 178 Ill. App. 3d at 224-25, 533 N.E.2d at 36-37.

■■ We agree that the State court and not the Internal Revenue Service is the appropriate forum for allocating the exemption, in conjunction with determining the other issues involved in a dissolution of marriage. However, we believe the State court should make the allocation based on which parent will be contributing the majority of the child's support, because the exemption has historically been tied to consideration by the Internal Revenue Service of which parent would contribute the majority of the child's support following the parents' divorce. Although it is unclear from the court's order whether the trial judge allocated the dependency exemption to the Wife because as custodial parent she was entitled to the exemption as the court did in error in *Einhorn*, we must reverse and modify this part of the judgment

because the evidence establishes that Husband will contribute the majority of the support to the minor child and is thus entitled to the exemption. Judgment will be modified such that Husband is awarded the dependency exemption and Wife is ordered to execute and deliver IRS Form 8332, the dependency exemption waiver declaration, to Husband at the end of each tax year, contingent upon Husband's compliance with the child support payments during that year.

 █ Finally, we believe that the court erred when it ordered Husband to name the minor child as the sole and exclusive beneficiary of his $500,000 life insurance policy. A parent may be required after dissolution of marriage to provide or maintain life insurance with his child as irrevocable beneficiary, under former sections 503(d) (now 503(g)), or 510(c) (now 510(d)), of the Dissolution Act. (Ill. Rev. Stat. 1987, ch. 40, pars. 503(g), 510(d); Ill. Rev. Stat. 1977, ch. 40, pars. 503(d), 510(c); *In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, 310, 411 N.E.2d 988, 993.) However, as the court noted in *Dulyn*, under former section 503(d), a fund to secure the support, education, maintenance and general welfare of a party's child may not be required absent a finding that it is required to protect and promote the best interests of the child. (*Dulyn*, 89 Ill. App. 3d at 310, 411 N.E.2d at 993.) Moreover, the court found that under former section 510(c) a parent's estate is liable for the deceased parent's support obligation to the extent just and appropriate in the circumstances and that the court may determine at the time of dissolution of the marriage the amount of support for which a deceased parent will be held liable. *Dulyn*, 89 Ill. App. 3d at 311, 411 N.E.2d at 994.

 The court's order in the instant case did not limit the obligation to maintain life insurance to the period in which Husband was obligated to provide child support. We would thus conclude that this provision of the order appears to be an unlawful court-ordered inheritance as the court concluded with respect to the trust payments in the *Bush* case discussed earlier. We also note that Husband testified that the life insurance proceeds were to be paid to his estate and that the child was to be a one-seventh beneficiary under his will. We therefore find that the life insurance obligation ordered by the court was inappropriate under the circumstances and that the trial court abused its discretion in so ordering, and we will reverse this portion of the order.

Judgment affirmed in part; reversed and modified in part.

CHAPMAN and RARICK, JJ., concur.