2017 IL App (3d) 160645

Opinion filed December 14, 2017

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2017

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| ADAM WATKINS, | ) | Marshall County, Illinois. |
| | ) | |
|     Petitioner-Appellant, | ) | Appeal No. 3-16-0645 |
| | ) | Circuit No. 12-D-23 |
|     and | ) | |
| | ) | |
| STACY WATKINS, | ) | Honorable |
| | ) | Michael P. McCuskey, |
|     Respondent-Appellee. | ) | Judge, presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justices McDade and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1      This is appeal arises from the trial court's interpretation of an agreed order entered by the trial court on November 25, 2015, concerning which party—the petitioner, Adam Watkins, or the respondent, Stacy Watkins—had the right to claim the parties' two children as tax exemptions for the 2015 tax year on tax returns that were filed in 2016. The agreed order modified a previous order that had allowed Stacy to claim the children on her tax returns on a yearly basis. On appeal, Adam requests that this court reverse the trial court's finding that the agreed order allowing him

the right to claim the children as tax exemptions did not apply until the 2016 tax year (for tax returns filed in 2017). We reverse the trial court's finding and remand for any further proceeding necessary as a result of our opinion.

¶ 2                                                       FACTS

¶ 3         On June 19, 2004, the parties were married. At that time, they had a three-year-old son, who had been born on November 5, 2001. Their second son was born on April 18, 2005. After eight years of marriage, on July 6, 2012, Adam filed a petition for dissolution of marriage. On November 14, 2012, a final judgment of dissolution of marriage was entered in this case, which incorporated, by reference, a "Final Order on Custody and Child Related Issues and Joint Parenting Agreement" and indicated that the "[s]aid Final Order on Custody and Child Related Issues and Joint Parenting Agreement is a final order on said issues."

¶ 4         According to the "Final Order on Custody and Child Related Issues," entered by the trial court on November 14, 2012, the parties were granted shared joint legal custody of the children, with Stacy designated as the residential parent and Adam ordered to pay $950 per month in child support. The order specifically indicated, "Stacy shall be allowed to claim both minor children as tax exemptions in the filing of her state and federal income tax returns on a yearly basis."

¶ 5         On March 6, 2015, Adam filed a verified petition for temporary relief. The petition indicated that the parties' child custody order of November 14, 2012, allowed Stacy to claim the dependent tax exemption for the parties' two minor children on her tax returns on a yearly basis and requested that the trial court "address the issue of the tax exemption[s] before the parties file[d] their 2014 income tax returns." Adam requested that "each party be allowed to claim one (1) child as a dependent on their income tax returns annually." With the filing of his verified

2

petition for temporary relief, Adam filed a notice of hearing and proof that his petition had been served upon Stacy on February 16, 2015.

¶ 6     On March 6, 2015, Stacy filed a petition to modify child support and a response to Adam's petition for temporary relief. In her response to Adam's petition, Stacy argued as follows:

> "This [trial] court is without authority to retroactively change the allocation of the dependency exemptions for 2014 in response to [Adam's] petition for Temporary Relief which has been filed on or about February 17, 2015. Instead, *this court would have authority, pursuant to this Petition, to address the income tax dependency exemption issue for calendar year 2015 and thereafter*." (Emphasis added.)

¶ 7     At a hearing on September 28, 2015, at which the parties entered an agreed order as to parenting time, Adam's attorney indicated that the parties had not reached an agreement as to the modification of child support. Adam's attorney indicated that Stacy's earnings plus her receiving $1000 per month in child support from Adam meant that Adam's net pay, after child support, was getting close to Stacy's net pay, with Adam never having had a single tax deduction for the children. Adam's attorney indicated that Adam was requesting both tax deductions for the children.

¶ 8     The trial court clarified, "[n]ow we are talking about the tax exemption for two kids for 2015 that are going to be filed no later than April 15 of 2016." Stacy's counsel responded, "[c]orrect." Stacy's counsel explained that the parties had initially agreed in their negotiations for modification of child support to each claim one child and then alternate when there was only one applicable child to claim as part of the "total agreement," but then "that last part fell apart."

3

Stacy's counsel indicated that Stacy was willing to divide the exemptions equally, but Adam's position was that because Stacy claimed the children for the past three years he should be able to do the same for the next three years.

¶ 9 With interjections from the attorneys at times, which are not included here, the trial court indicated:

"Well, I think it is real simple. And that is that his child support should be based on 28 percent of his average annual income. And that's looking back obviously, or you can do it in April of each year after you have got the tax return so that you can either come in on a modification, it would be nicer to have an agreement, that you're going to adjust it annually in April after the tax return, 28 percent. If he's paying 28 percent at this level of $1,000 a month or more, I think he's entitled to the two tax exemptions.

* * *

And that's the way I would rule if you were in front of me at a contested hearing in April of 2016. I would be adjusting the child support at that time based on his 2015 income and consider it a substantial change because we are talking about bonuses. *** Who knows what that is going to be in the future.

* * *

Well, I'm talking about if he came in for a modification. I don't have authority to change anything in the past because there [are] no pleadings in front of me. But I'm telling you how I would rule if there were pleadings in front of me based on the fact that he is paying approximately $12,000 or more in child support of which he doesn't get to deduct it.

4

*** I think if he is paying current, which this Court doesn't see a lot of currency, 28 percent including bonuses that the total ends up $1,000 or more a month, he's entitled to both exemptions.

* * *

I would like to see the two of you work on that order. I'm going to be here next year. So that's what I would be doing if you were back here in April. It would be a lot nicer just to save them the money of coming back to court.

* * *

*** So hopefully you can work on that and we will see you with an agreed-upon order. Otherwise you have got a good idea of what I will do on another day."

¶ 10    On November 25, 2015, the trial court entered the parties' "Agreed Final Order on Modification of Child Support," which indicated that "[t]his cause comes on for hearing on entry of this Agreed Order."[1] The order indicated that the final order on custody and child related issues had been entered on November 14, 2012, and there had since been a substantial change in circumstances. The order indicated that Adam's new child support obligation would be $1032.76 per month, with the obligation "abated" during June and July (because Adam would have primary physical custody of the children during the summer months commencing in 2016).

¶ 11    Additionally, the agreed order of November 25, 2015, indicated as follows:

"The November 14, 2012 Order granted the tax exemption to the Respondent [Stacy] each year. The Petitioner's [Adam's] petition for temporary

[1]It does not appear from the record on appeal that any proceedings were recorded or transcribed from when the agreed order was entered on November 25, 2015. The docket entry for that date merely indicates "Agreed Final Order On Modification Of Child Support" with no identification of the court reporter, whereas other docket entries include the court reporter's initials.

relief (regarding the tax exemption) is hereby granted. [Adam] shall claim the children annually on his income tax returns. [Stacy] shall cooperate to execute any necessary documentation, if required by a respective tax authority, including but not limited to IRS Form 8332."

¶ 12 On February 16, 2016, Adam filed a verified petition for rule to show cause, arguing that Stacy acted contrary to the court's order of November 25, 2015, by refusing to allow Adam to claim the parties' children and instead claiming the children on her own income tax returns. Adam indicated that he learned that Stacy had claimed the children on her 2015 tax return when his electronically filed 2015 tax return was rejected due to Stacy already claiming the children on her 2015 tax return. Adam further indicated that as a result of Stacy's violation of the order entered on November 25, 2015, he was required to submit a paper tax return and pay additional expenses for submitting the original tax return, and that he was informed that he may also be precluded from claiming the children as exemptions on his future tax returns. Adam motioned the trial court to enter an order finding Stacy in contempt of court and finding the contempt purged by Stacy executing IRS form 8332 and any other respective form to allow him to claim the children, Stacy filing an amended 2015 tax return wherein she did not claim the children, and Stacy reimbursing Adam for any expenses or penalties incurred as a result of Stacy unilaterally claiming the children on her returns. Adam also filed a "motion to freeze tax refund," requesting the court enter an order to freeze Stacy's 2015 tax refund in the trust account of Adam's attorney within 48 hours of her receipt of the refund monies.

¶ 13 On February 16, 2016, the trial court entered an order for Stacy to show cause, finding that from Adam's verified petition it appeared that Stacy had willfully and deliberately failed to comply with the prior order of the court by refusing to allow Adam to claim the children on his

6

tax returns and instead claiming both children on her own income tax returns, contrary to the court's order from November 25, 2015. The trial court ordered Stacy to appear on April 13, 2016, to show cause, if any, why she should not be punished for civil contempt for refusing to comply with the court's order and why all remedies sought by Adam in his petition should not be granted. The trial court also ordered that Stacy "shall not spend any tax monies received and shall tender all tax return monies to [Adam's attorney] within 24 business hours of receipt."

¶ 14       In response, on April 11, 2016, Stacy filed a petition for relief from the order of November 25, 2015, or, in the alternative, for the court to amend its order of November 25, 2015, *nunc pro tunc*, to conform to the intent of the parties. Stacy alleged that the order was entered as the result of a mutual mistake of fact, mutual scriveners' error, or both, necessitating that the order be vacated or amended *nunc pro tunc*. Stacy claimed the order failed to include language that the order was to be applied prospective only, instead of suggesting that the dependency exemptions were to be retroactive to January 1, 2015.

¶ 15       Also on April 11, 2016, in a motion to vacate the order for her to show cause, Stacy acknowledged that the order of November 25, 2015, was silent as to the effective date of, and as to the retroactivity for, Adam claiming the children as dependents. She argued that Adam claiming the children on his tax returns was intended to be prospective for the tax year 2016, to be filed in 2017, and beyond.

¶ 16       On July 18, 2016, a hearing took place on matters pending before the court. The trial court indicated that the court reporter was not available that morning so the court was unable to

7

review the hearing transcript from November 25, 2015, to determine "exactly what was said, which would have been helpful."[2]

¶ 17      Stacy's new attorney, Scott Shore, who had not been part of the parties' prior negotiations, provided a "pretrial transcript of September 28 and the order of November 25." Shore argued that the trial court would not have intended the order allowing Adam to claim the children on his tax returns to be retroactive, "but rather the [court] would adjust it as of the following April, April 2016." The trial court indicated "that's exactly what I thought I might have said" but without the court reporter there that morning he had no way to go back and see. The trial court reviewed the transcripts provided by Stacy's attorney.

¶ 18      Adam's attorney indicated that she and Stacy's previous attorney had engaged in extensive negotiations with the parties, during which the figures and agreements were "hammered out." Stacy's new attorney, Shore, argued there was no indication in the order that the order was to be applied retroactively, so the order should not be retroactively applied.

¶ 19      The trial court found that the order did not mean for Adam to claim the tax exemptions for the 2015 tax year. The trial court indicated:

> "So if there is an error here, it's not putting a clear message on what year [Adam] would be entitled to. But he was entitled to the future, and the future is 2016, filed in 2017. I mean, that's the intent. That's what the language—
>
> But then the two attorneys wrote 'annually,' making [Adam's attorney] and [Adam] think that goes back in time. But it doesn't. So nobody's actually

---

[2]It does not appear from the record on appeal that any proceedings were recorded or transcribed from when the agreed order was entered on November 25, 2015. The docket entry for that date merely indicates "Agreed Final Order On Modification Of Child Support" with no identification of the court reporter, whereas other docket entries include the court reporter's initials.

done anything wrong here. He gets—right now as we're speaking, he gets 2016, filed next year.

* * *

And the intent is his is in the future, not to relate back because if it was, it should have said that Adam Watkins is allowed to claim the children on the 2015 tax return to be filed in 2016. But it didn't say that.

So [Stacy] continued on her order [from 2012]. And so when she filed in January '16, she was actually filing from January 1, '15, which is a long time before the November 25 order, for the income of January 1, '15, through December of 2015. ***

So the petition for rule to show cause cannot succeed based on the intent of the Court. And the language that's here certainly didn't say he gets to claim the 2015 income when he files in '16 and the exemption of the children."

¶ 20 Adam's attorney indicated that, through the negotiation discussions with the parties, it was understood that the parties intended for Adam to claim the children on his next-filed tax return, starting from the time of the court order in November 2015, and forward. To show that Stacy, too, understood the intent of the parties was for Adam to claim the children on his tax returns to be filed in 2016 (for the tax year of 2015), Adam's attorney proffered a text message Stacy had sent to Adam, in which Stacy indicated that, despite the court order, she was going to claim the children on her tax return because Adam owed her $119, she did not care what they had agreed, and she was going to take the tax exemption anyway. The proffered text message was not entered as an exhibit into evidence.

¶ 21 The trial court stated:

9

"Whatever they clearly understood, the lawyers did a bad job of asking me to sign something that didn't follow exactly what the Court said. And I'm not responsible for two lawyers handing me a piece of paper saying, 'Sign it. This is our agreement,' after the Court's already said what he's going to do, and now you're telling me, 'Well, we really didn't intend that.' That's not what the Court can go back now and change.

What the Court wants to see is what did the Court intend? *** Lot's of people talk in front of their lawyers, but it's when you hand something to a judge after the judge has spoken, that's what becomes final.

And if you want to go to the appellate court, fine. I think there's a good record now. There wasn't a good record until we found out what the Court said, which is what Mr. Shore has put forward."

¶ 22    Adam's attorney noted that the transcript of the pretrial hearing on September 28, 2015, indicated that the trial judge had said, " 'we're talking about the tax exemption for the two kids for 2015 that are going to be filed no later than April 15 of 2016.' " The trial court indicated, "Right. But that's before the order came in." The trial court found that based on the 2012 order, Stacy had been entitled to claim both children and "when January 1, 2015, arrived, she was entitled to take the tax exemption for 2015." The trial court indicated that the agreed order should have said, "the 2015 tax exemption which she was allowed, Stacy, on November 14, 2012, is now changed and amended, and she no longer can take the 2015 tax return that she was entitled to all year until September or November."

¶ 23    The trial court also found that the order of November 25, 2015, was not clear that it was amending the order of 2012. The trial court indicated:

10

"Nothing says that was amended. Nothing says that what she was standing here in court in September or November she was entitled to was taken away from her.

*** It said nothing about modifying November 14, 2012. It didn't say that. So it's in the future, futuro. Nothing saying we go back and take away what she had already in November '12 and she had all year."

¶ 24    The trial court entered an order (1) vacating its prior order for Stacy to show cause, (2) denying Adam's motion to freeze Stacy's tax refund, (3) finding Adam's right to claim the parties' children as dependents was "prospective applying to 2016 taxes payable 2017 and years thereafter," and (4) denying Stacy's petition for relief from the order of November 25, 2015, finding that the calculations shown of record supported the entry of the child support amount.

¶ 25    Adam filed a motion for the trial court to reconsider its finding that Adam's right to claim the children did not begin until his tax returns were filed in 2017 (for the 2016 tax year). The trial court denied Adam's motion to reconsider. Adam appealed.

¶ 26                                ANALYSIS

¶ 27    On appeal, Adam argues that the trial court erred by finding that the agreed order of November 25, 2015, did not allow him to claim the parties' two children as tax exemptions for the 2015 tax year on tax returns filed in 2016, even though the parties had intended for the agreed order to allow Adam to do so. Stacy argues that the trial court did not err in its interpretation of the order of November 25, 2015, because the effect of the court order, "as duly intended by the court," was to allow Stacy to continue to claim the children for the 2015 tax year.

¶ 28    An agreed order adopted by the court is not an adjudication of the parties' rights but, rather, a record of their private, contractual agreement and must be construed to give effect to the

11

parties' intent, which is determined from the language of the order when there is no ambiguity in its terms. *Commonwealth Edison Co. v. Elston Avenue Properties, LLC*, 2017 IL App (1st) 153228, ¶ 13. An agreed order must be interpreted in its entirety, considering all facts and circumstances surrounding its execution, as well as all pleadings and motions from which it stems. *Draper & Kramer, Inc. v. King*, 2014 IL App (1st) 132073, ¶ 27.

¶ 29        At the time of the parties' "agreed final ordered," which was entered on November 25, 2015, section 502(a) of the Illinois Marriage and Dissolution of Marriage Act provided that in order to promote amicable settlement of disputes, parties to a dissolution of marriage case may enter into an agreement for the disposition of their property, maintenance, and "support, custody and visitation of their children." 750 ILCS 5/502(a) (West 2014). However, the court is not bound by agreements providing for the support, custody, and visitation of children and can reject terms in agreements that involve children. 750 ILCS 5/502(b) (West 2014); *Blisset v. Blisset*, 123 Ill. 2d 161, 167 (1988). But where the terms of an agreement are, in fact, set forth in the court's judgment, the parties "shall be ordered to perform under such terms" (750 ILCS 5/502(d) (West 2014)) and the terms of an agreement set forth in the judgment "are enforceable as contract terms" (750 ILCS 5/502(e) (West 2014)).

¶ 30        The modification of a child support obligation is a judicial function, administered by the court as a matter of discretion. *Blisset*, 123 Ill. 2d at 167-68. Private agreements to modify child support without court approval are unenforceable. *Id.* Parents may create an enforceable agreement for the modification of child support by petitioning the court for support modification and establishing that their agreement is in the best interests of the children. *Id.* at 168.

¶ 31        The allocation of the tax exemption is an element of child support, subject to the trial court's discretion. *In re Marriage of Fowler*, 197 Ill. App. 3d 95, 100 (1989). It is within the

12

authority of the trial court to allocate the dependency tax exemption to a noncustodial spouse and to order the custodial parent to sign a declaration for Internal Revenue Service (IRS) purposes that he or she will not claim the exemption. *In re Marriage of Rogliano*, 198 Ill. App. 3d 404, 415 (1990).

¶ 32    A joint parenting agreement is a contract between the parties and, as such, the primary objective is to give effect to the intent of the parties, which is to be determined only by the language of the agreement, absent any ambiguity. *In re Marriage of Coulter*, 2012 IL 113474, ¶ 19. While the issue of whether the trial court's modification of child support was erroneous is generally reviewed for an abuse of discretion, a review of a trial court's interpretation and effect of the parties' agreement presents a question of law, which we review *de novo*. *Id.*; *In re Marriage of Razzano*, 2012 IL App (3d) 110608, ¶ 13. Additionally, we review the trial court's ruling on a motion to reconsider that is based on its application of existing law *de novo*; whereas, we review a ruling on a motion to reconsider based on newly discovered evidence or changes in the law for an abuse of discretion. *In re Tyreke H.*, 2017 IL App (1st) 170406, ¶ 109.

¶ 33    In this case, on November 14, 2012, the parties entered an agreed order to modify the child support that had been set in their agreed "Final Order on Custody and Child Related Issues," which had been incorporated into the court's judgment for the dissolution of their marriage. The entry of the agreed order on November 25, 2015, resulted from Adam's pending petition for temporary relief, in which he requested relief from the order of November 14, 2012, so that he could claim a dependency tax exemption, and also from Stacy's pending petition to modify child support. The agreed order of November 25, 2015, indicated that it had been entered after the court heard the arguments of the parties. The record shows the parties had previously advised the trial court of their positions regarding the allocation of the child tax exemptions,

13

through their pleadings and in open court on September 28, 2015. (There is no indication of a recording of the court proceedings from when the parties' agreed order was entered by the court on November 25, 2015.)

¶ 34    We find no ambiguity in the terms of the "Agreed Final Order on Modification of Child Support" that was entered by the trial court on November 25, 2015. The order indicated that the parties agreed there was a prior order entered on November 14, 2012, which allowed Stacy to claim the dependency tax exemptions each year and, now, Adam's petition for temporary relief was being granted so that Adam "shall claim the children annually on his income tax returns." Thus, the title and language of the agreed order was clear that it pertained to the modification of child support, specifically the modification of the child support order that had been entered on November 14, 2012, and that the modification included a modification of the right to claim the dependency tax exemptions. The order did not indicate that Adam was allotted the tax exemptions in reference to any particular tax year, but instead referenced him claiming the dependency tax exemptions "on his income tax return" annually.

¶ 35    In considering all the facts and circumstances surrounding the execution of the agreed order of November 25, 2015, we note that Adam's petition for temporary relief, which was granted by the agreed order, was filed in March 2015 and requested that the child tax exemption be addressed "before the parties file their 2014 income tax returns." The petition was pending when the issue of the child tax exemptions was discussed in open court on September 28, 2015 (at which time the parties had presumably already filed their 2014 tax returns). In response to Adam's petition, Stacy indicated that Adam's petition would be applicable to "the income tax dependency exemption issue for calendar year 2015 and thereafter." At the hearing on September 28, 2015, prior to the trial court subsequently entering the agreed order on November 25, 2015,

14

the trial court clarified that Adam was requesting "the tax exemption for two kids for 2015 that are going to be filed no later than April 15 of 2016." Stacy's counsel confirmed that the parties were referring to tax exemptions for the year 2015 to be filed by April 2016, further explaining that since Stacy had claimed the children for the past three years (*i.e.*, tax years 2012, 2013, and 2014), Adam was requesting that he be able to do the same (*i.e.*, tax years 2015, 2016, and 2017). We further note that Stacy claimed the children as tax exemptions pursuant to the order entered November 14, 2012, which used substantially similar language to the agreed order in question in providing that Stacy was allowed "to claim both minor children as tax exemptions *** on a yearly basis," after which Stacy presumably claimed the children on her next-filed tax return in 2013 for the tax year 2012.

¶ 36    Therefore, from our review of the record, we conclude that the parties intended for the agreed order, entered on November 25, 2015, to allow Adam to claim the tax exemptions for the children for the 2015 tax year on his 2016 tax returns. Consequently, the trial court erred in finding that Adam's right to claim the parties' children as dependents did not, in fact, encompass the 2015 tax year. Accordingly, we reverse the trial court's finding on this issue entered on July 18, 2016, and we reverse the trial court's denial of Adam's motion to reconsider entered on September 28, 2016. We remand for any further proceedings necessary as a result of this opinion and suggest that, on remand, language be added to the order to indicate that Stacy's obligation to provide the IRS declaration to Adam each year is contingent upon her receiving child support payments from him. See *Rogliano*, 198 Ill. App. 3d at 415 (citing *In re Marriage of Einhorn*, 178 Ill. App. 3d 212, 224-225 (1988) (it is within the trial court's discretion to allocate the tax dependency exemption by ordering the custodial parent to sign a declaration that he or she will not claim the exemption; such an order "must provide that the execution of the declaration is

15

contingent upon the custodial parent's receipt of child support payments" if the noncustodial parent is ordered to make such payments).

¶ 37    We need not address Stacy's argument that the trial court's order declining to find her in contempt of court was proper because the issue is not before this court on appeal. We, consequently, grant Adam's motion to strike Stacy's argument related to the trial court's decision to decline finding Stacy in contempt of court.

¶ 38                                         CONCLUSION

¶ 39    The judgment of the circuit court of Marshall County is reversed, and we remand for the consideration of the above-noted language to be added to the modification of child support order entered on November 25, 2015, and for any further proceedings that are necessary as a result of this opinion.

¶ 40    Reversed and remanded with directions.