NOTICE
Decision filed 06/18/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250745-U

NO. 5-25-0745

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| ANGELA J. GORAZD, | ) | St. Clair County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 24-DC-179 |
| | ) | |
| STEPHEN M. GORAZD, | ) | Honorable |
| | ) | Alana I. Mejias, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE BOLLINGER delivered the judgment of the court.
Justices Boie and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where a letter of intent received subsequent to the conclusion of an auction was not comparable to the highest bid obtained during the auction, it was not an abuse of discretion for the circuit court to approve the auction bid.

¶ 2    During these litigious dissolution proceedings, petitioner Angela J. Gorazd was granted leave to list certain business/real estate assets with an auction house. After receiving a bid through the court-approved process, Angela sought the circuit court's approval of the highest bid. Respondent Stephen M. Gorazd objected during the hearing on the motion to approve the bid, arguing that he had received a letter of intent for an amount exceeding the highest bid by $600,000 after the auction had concluded. Upon review of the letter of intent, the circuit court determined that the letter contained references to additional property not included in the auction, which was

1

excluded at Stephen's request. The circuit court concluded that the letter of intent could not be considered comparable to the bid. Because the letter of intent was received after the auction closed and was not an actual bid, the circuit court approved the auction house's highest bid. Stephen appealed, asserting that it was error for the circuit court to reject his letter of intent in favor of the highest bid. For the reasons set forth below, we affirm the circuit court's decision to approve the highest bid.

¶ 3                                    I. BACKGROUND

¶ 4      Only those facts and pleadings pertinent to this appeal will be addressed. On May 29, 2024, petitioner Angela J. Gorazd filed a petition for dissolution of marriage against respondent Stephen M. Gorazd. On November 21, 2024, Angela filed a petition seeking authority to sell marital assets. Concerning this appeal, it is noted that the parties owned two businesses: Hidden Lake Winery (Hidden Lake) and Bella Vista Winery LLC. Angela indicated that the businesses were under Stephen's sole control and that he had defaulted on the Hidden Lake loan. She requested that the circuit court grant authority to sell the businesses. Stephen did not file a response.

¶ 5      On November 25, 2024, a temporary order was entered, which stated that Stephen was granted 60 days to obtain a valuation of both wineries, "otherwise, the wineries shall be listed for sale." Stephen never filed a valuation of the wineries. On March 4, 2025, the circuit court entered an order stating, in part, that "after agreement," the parties were to submit proposals for a person to sell the businesses within 30 days. The common law record does not reflect any such proposals on file. On May 13, 2025, a temporary order was entered which indicated, in part, that Hidden Lake was to be listed for sale with Coldwell Banker.

¶ 6      On June 12, 2025, Angela filed a motion to amend the order issued on May 13, 2025. She stated that Coldwell Banker was unable to handle the sale of businesses and properties, and she

2

requested that Hidden Lake be listed for sale with Adam's Auction and Real Estate Services (Adam's Auction). Stephen did not file any response. The matter was scheduled for a hearing on June 23, 2025; however, no report of proceedings was provided for review. A written temporary order was issued on the same date, granting the motion to modify and ordering that Hidden Lake be listed for sale with Adam's Auction, with the circuit court retaining "final approval of the final bid." On August 14, 2025, the circuit court issued an order clarifying that the sale of Hidden Lake shall encompass "the land, buildings, fixtures, kitchen equipment, restaurant equipment, and tables and chairs." The order further specified that any items remaining separate shall remain on the property until further order of court.

¶ 7    On August 29, 2025, Angela filed a motion seeking approval for a bid regarding Hidden Lake. The motion was accompanied by an auction contract reflecting a total purchase price of $2,014,000. Stephen did not file a response. A hearing was held on September 3, 2025. Angela's attorney stated that she understood a letter of intent had been submitted to Stephen on September 1, 2025, after the auction's conclusion, and not through Adam's Auction. This document was not presented as an offer but as a letter of intent to purchase Hidden Lake for $2.5 million, including vehicles and equipment that Stephen had previously requested be excluded from the auction. The attorney characterized the letter of intent as suspicious because it was submitted through improper channels, noting it was likely sent after the auction closed, presumably after the winning bid was determined. The attorney requested that the circuit court approve the bid processed through Adam's Auction.

¶ 8    Stephen opposed the entry of such an order and confirmed receipt of the letter of intent. According to Stephen, the letter of intent complied with all auction terms and conditions and

3

included a proposed down payment of $50,000. Stephen contended that the bid exceeded the auction offering by $600,000 and included all of Hidden Lake's assets.

¶ 9    After hearing arguments of counsel, the circuit court discussed the written terms of the auction agreement and observed that the wine, wine-making equipment, and wine license were not to be transferred as part of the sale pursuant to a request attributable to Stephen's desire to exclude these assets from the auction. The circuit court noted that Stephen's claim of receipt of a higher bid was somewhat disingenuous, as the letter of intent was not based on the same sale—specifically, it targeted not only the real estate and property but also included the wine, wine-making equipment, and wine licensing. The circuit court concluded that it could not compare the letter of intent with the auction contract because they pertained to different terms. Ultimately, the circuit court approved the Adam's Auction bid over Stephen's objection. A written order was entered on September 3, 2025, approving the bid for Hidden Lake. On September 16, 2025, the circuit court entered an order, over Angela's objections, finding that the September 3, 2025, order was appealable. On the same date, Stephen filed a notice of appeal pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 10                                  II. ANALYSIS

¶ 11    On appeal, Stephen initially contends that, as the circuit court did not hear live testimony, our standard of review should be *de novo*. He argues that the circuit court failed to make any findings regarding how or why the auction bid constitutes a superior offer, noting that the auction bid was $600,000 less than the letter of intent. Furthermore, he maintains that Angela bore the "burden of persuasion in her motion to enter judgment to accept the auction bid" but did not present any evidence to support her assertion that the letter of intent was either different or inferior to the auction bid. He also asserts that Angela did not provide evidence demonstrating that the wine-

4

making equipment was valued at $600,000, thereby justifying the rejection of the letter of intent. Consequently, he requests that the circuit court's decision be reversed and that the parties be directed to accept the offer outlined in the letter of intent.

¶ 12    In response, Angela contends that the standard of review is an abuse of discretion, given that the circuit court possesses broad discretion in the distribution of marital property. She argues that the circuit court was merely executing its order and that the bid it approved did not encompass the wine or wine-making equipment, as Stephen requested their exclusion. Additionally, she emphasizes that the auction bid exceeds Stephen's $1.95 million valuation of Hidden Lake. She maintains that the circuit court did not abuse its discretion in approving the bid amount of $2,014,000 and requests that we affirm the order issued on September 3, 2025.

¶ 13    We first address the appropriate standard of review. The issue on appeal pertains to the circuit court's decision regarding the distribution of Hidden Lake, whether through Adam's Auction or the subsequent letter of intent. In essence, Stephen is appealing the circuit court's approach to the distribution of Hidden Lake; therefore, we concur with Angela that the correct standard of review is abuse of discretion as to whether the circuit court's order approving the bid for Hidden Lake was in error. See *In re Marriage of Vancura*, 356 Ill. App. 3d 200, 205 (2005). "An abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court." *In re Marriage of Moore*, 307 Ill. App. 3d 1041, 1043 (1999).

¶ 14    We conclude that the circuit court did not abuse its discretion in accepting the bid received through Adam's Auction, as the circuit court was managing the parties' contentious litigation in an orderly and efficient manner, while providing opportunities for input from both parties. Nonetheless, from the outset of the filings concerning the sale of Hidden Lake, Stephen failed to submit any written response objecting to Angela's petitions regarding the same. In fact, it is

5

noteworthy that during oral argument before this court, Stephen strongly asserted that Angela did not present any evidence regarding the value of the wine and wine-making equipment. However, we note that Stephen was afforded the opportunity prior to Hidden Lake being listed for sale to submit a valuation of the property to the circuit court and simply failed to do so.

¶ 15    The sale of Hidden Lake was brought to the circuit court's attention by Angela's filing on November 21, 2024, seeking permission to sell marital assets. Stephen did not respond nor did he provide us with a report of proceedings concerning the hearing on that motion. Nevertheless, an order indicates that Stephen was to obtain a valuation of Hidden Lake; otherwise, it was to be listed for sale. Stephen again did not file anything. Consequently, on March 4, 2025, the circuit court issued an order directing the parties to submit proposals for the sale of Hidden Lake. Neither party submitted proposals, and on May 13, 2025, the circuit court ordered Coldwell Banker to act as the broker for Hidden Lake. One month later, Angela filed a motion indicating that Coldwell Banker was unable to manage the sale of a business and requested permission to list Hidden Lake with Adam's Auction. Once more, Stephen did not respond, and there is no report of proceedings concerning that hearing. An order confirms that Adam's Auction was approved to sell Hidden Lake, with the circuit court retaining final approval over the bid. In August, Angela filed a petition seeking approval of the bid received by Adam's Auction; Stephen again failed to respond. During a hearing on that motion, Stephen's objection was based on the fact that he had obtained an offer outside of Adam's Auction, in the form of a letter, after the auction's closing date. Essentially, Stephen intended to sell Hidden Lake in a manner inconsistent with the prior motions, hearings, and orders that had been ongoing for nearly nine months. His current argument is that the circuit court erred in approving the highest bid and in failing to accept an offer he received separately. Stephen does not contend that it was erroneous for the circuit court to order the sale of Hidden

6

Lake or that he opposed the sale; rather, his objection pertains to the court's adherence to its previous orders. By following its prior orders and approving the bid received through Adam's Auction, the circuit court was expeditiously progressing the matter in compliance with its prior rulings, and we find no abuse of discretion.

¶ 16    Furthermore, the circuit court ordered that Hidden Lake be listed for sale with Adam's Auction, which Angela duly complied with. The circuit court also mandated that the final bid be subject to its approval, a directive that Angela complied with by seeking the circuit court's approval of the final bid. The order issued on August 14, 2025, detailed the specific items to be included and excluded in the sale, and the auction bid conformed to these stipulations. Conversely, Stephen obtained a letter of intent—not a bid—and did so after the auction had concluded, not through Adam's Auction. Furthermore, Stephen's letter of intent encompassed "100% of the assets" of Hidden Lake, thereby incorporating items explicitly excluded by the circuit court. In essence, Stephen's letter of intent failed to comply with any of the orders issued by the circuit court.

¶ 17    Stephen highlights that the wine and wine-making equipment were omitted from the auction bid, but included in the letter of intent. However, the circuit court noted that the reason the bid did not encompass the wine and wine-making equipment was due to Stephen's request not to include them. The circuit court further remarked that the new bid appeared "somewhat disingenuous" because it was not based on the same sale, especially given that the letter of intent included additional items. Considering that the report of proceedings does not include transcripts for all the relevant court appearances, we find no evidence supporting Stephen's contention that he requested the inclusion of the wine and wine-making equipment in the sale of Hidden Lake, contrary to the remarks made by the circuit court. "Our supreme court has long held that, in order

7

to support a claim of error on appeal, the appellant has the burden to present a sufficiently complete record." *Capital One, N.A. v. Banks*, 2025 IL App (1st) 241412-U, ¶ 18. "In the absence of transcripts or acceptable substitutes, it is presumed that the order entered by the trial court was in conformity with the law and had a sufficient factual basis." *Id.* Consequently, we presume that the circuit court had an adequate factual basis for relying on its determination that Stephen did not want to include the wine and wine-making equipment in the sale. As such, we concur with the circuit court that no meaningful comparison can be made between the auction bid and the letter of intent, as they pertain to different items.

¶ 18    Stephen asserts that Angela failed to "present any evidence that the wine and wine-making equipment was worth $600,000 to justify rejection" or that the "LOI was somehow 'not legitimate' " but fails to provide any legal authority to support that the onus was on Angela to present such evidence at the hearing. The hearing was simply a request for the circuit court to approve a bid from an auction the circuit court previously ordered. Angela had a copy of the auction bid attached to her motion to show that it complied with the circuit court's previous orders. As a result, the circuit court noted that it had an executed contract and earnest money for the winery and therefore would approve the bid. Stephen did not argue or note anything nefarious about the auction bid. He instead wanted the circuit court not to accept the bid and to accept a letter of intent that did not comply with its previous orders. Stephen was the party that objected and presented no evidence in support of his objection. For these reasons, we do not find any merit to Stephen's contention that the circuit court erred in accepting the auction bid.

¶ 19                              III. CONCLUSION

¶ 20     Based on the foregoing, we find that the circuit court did not abuse its discretion in
approving the highest bid received at Adam's Auction, and therefore, affirm its September 3, 2025,
order.

¶ 21     Affirmed.